# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RAMIRO VELA, ) | 3:13-cv-00227-RCJ-LRH-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| JAMES G. COX, *et al.*, ) | |
| ) | |
| Defendants. ) | June 4, 2014 |
| _____ ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' Rule 12(b) motion to dismiss (#17).[1]  Plaintiff opposed (#21), and defendants replied (#22).  The court has thoroughly reviewed the record and recommends that defendants' motion to dismiss (#17) be denied.

## I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Ramiro Vela ("plaintiff"), a *pro se* litigant, is incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#6).  On August 27, 2013, plaintiff filed his first amended civil rights complaint, pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth and Fourteenth Amendment rights.  *Id.*  The court screened the complaint, pursuant to 28 U.S.C. § 1915A, and permitted only plaintiff's Eighth Amendment medical claim against defendants Bannister, M. Johns and Walsh to proceed (#7, p. 4).

---

[1] Refers to the court's docket numbers.

Plaintiff alleges that defendants Bannister and Johns denied him proper medical care for his degenerative hip and back conditions by prescribing "placebo" medications for his hypertension to punish and incapacitate plaintiff (#6, pp. 4-5).  Plaintiff alleges that he was prescribed Losartan Potassium in place of Micardis due to the cost of Micardis and, when Dr. Gedney overruled the prescription change, defendants Bannister and Walsh delayed approval of the needed medication for over five months and denied plaintiff's grievances.  *Id*.

Defendants ask the court to grant their unenumerated 12(b) motion to dismiss on the grounds that plaintiff failed to properly exhaust his administrative remedies (#17, p. 1).  Defendants argue that plaintiff properly filed informal and first-level grievances, but then failed to properly file his second-level grievance, and therefore, his claim is unexhausted and must be dismissed.  *Id*.

## II.  DISCUSSION & ANALYSIS

The court addresses two preliminary matters.  First, the court notes that plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Second, defendants styled their motion as an unenumerated Rule 12(b) motion to dismiss, which was the accepted procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA at that time.  *See* 42 U.S.C. § 1997e(a); *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003).  As defendants acknowledge in their reply brief, the Ninth Circuit has subsequently overruled *Wyatt* and held that, if the evidence of failure to exhaust administrative remedies permits, a defendant may move for summary judgment under Federal Rule of Civil Procedure 56.  *Albino v. Baca*, 2014 WL 1317141 *14 (9th Cir., Apr. 3, 2014).  The Court

stated that the question of exhaustion, if feasible, should be decided before reaching the merits of an inmate's claims. *Id*. Accordingly, and as defendants request in their reply, the court shall construe defendants' motion as a motion for summary judgment.

**A.    Legal Standards**

**1.  42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

**2.  Summary Judgment**

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences must accord deference
> to the views of prison authorities. Unless a prisoner can point to sufficient evidence

regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### 3. Exhaustion

Defendants bring this motion (now construed as one for summary judgment) on the basis that plaintiff failed to properly exhaust his administrative remedies (#18, p. 2).

Failure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), and the defendant bears the burden of proving that the plaintiff has not exhausted his available administrative remedies.  *Jones v. Bock*, 549 U.S. 199, 216 (2007). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading.  *Jones*, 549 U.S. at 216.

"[E]xhaustion is analogous to subject matter jurisdiction, personal jurisdiction, venue, and abstension, in that all these matters are typically decided at the outset of litigation."  *Albino*, 2004 WL *11.   Once defendants have moved for summary judgment and carried their burden of presenting evidence that a plaintiff has not exhausted available administrative remedies, the burden shifts to the prisoner to come forward with evidence demonstrating that in her or his case existing and generally available remedies were unavailable.  *Id*. at 13.   The burden of proof ultimately remains with the defendant, however, and the court may decide disputed questions of material fact if necessary.  *Id*. at 12.

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion requirement is now mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citation omitted).  Administrative remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Porter*, 534 U.S. at 524 (citing *Booth v. C.O. Churner*, 532 U.S. 731, 740 n.5 (2001)).  Even when the prisoner seeks remedies that are not available in administrative proceedings—notably money damages—exhaustion is still required prior to filing suit.  *Booth*, 532 U.S. at 741.  Recent case law demonstrates that the

Supreme Court has strictly construed section 1997e(a).  *Id.* at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance; rather the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "Proper exhaustion" means that the prisoner must use "all steps the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)."  *Id.* (citation omitted) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

"[A]pplicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself."  *Jones*, 549 U.S. at 218.  NDOC's grievance procedure is governed by Administrative Regulation ("AR") 740.[2]  AR 740 provides that an inmate may use the grievance procedure to "resolve addressable inmate claims including . . . personal property, property damage, disciplinary appeals, personal injuries, any other tort claim or civil rights claim relating to conditions of institutional life."  *Id.* at 2.  NDOC's grievance process has three levels of review: (1) an informal level grievance, which "should be reviewed, investigated and responded to by the inmate's assigned Caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "should be reviewed, investigated and responded to by the Warden;" and (3) a second level formal grievance, which "should be reviewed and responded to" by either the appropriate Deputy Director, the Offender Management Administrator, or the Medical Director.  *Id.* at 4-7.

---

[2] Defendants attach an unauthenticated copy of AR 740 as Ex. A to their motion.  However, AR 740 is a public document readily available online at http://www.doc.nv.gov/sites/doc/files/pdf/AR740.pdf, and the court shall cite to this online version.

Once an inmate submits an informal grievance, NDOC logs the grievance into a tracking system.  *Id.* at 2.  The caseworker assigned to the grievance will provide the inmate with a response within forty-five days, unless additional time is needed to conduct further investigation.  *Id.* at 4-6. If the inmate is not satisfied by the caseworker's response, he may appeal the decision within five days by filing a first-level formal grievance.[3]  *Id.* at 6.  The Warden will provide the inmate with a response within forty-five days.  *Id.* at 7.  If the inmate is not satisfied with the Warden's response, he may appeal the decision within five days by filing a second-level formal grievance.  *Id.*  The appropriate NDOC official will provide the inmate with a response within sixty days.  *Id.*

If an inmate's grievance does not comply with procedural guidelines, the grievance is returned to the inmate with instructions for proper filing.  *Id.* at 6.  Upon completion of the grievance process, an inmate may pursue civil rights litigation in federal court.

Accordingly, as "proper exhaustion of administrative remedies," requires an inmate to comply with the agency's deadlines and "other critical procedural rules . . . ." an inmate in NDOC custody must comply with AR 740 by timely completing the three-level grievance procedure in order to properly exhaust his administrative remedies.  *Woodford*, 548 U.S. at 84, 90.

**B.  Analysis**

Defendants argue that plaintiff failed to properly exhaust his administrative remedies (#17, p. 1).  They allege that on October 2, 2012, plaintiff filed an informal grievance related to his blood pressure medication and other alleged Eighth Amendment violations, which was assigned Log No. 2006-29-51365 (*id.* at 5; #17, Ex. B, pp. 10-20).  In sum, plaintiff complied with the grievance procedures at the informal and first levels (#17, Ex. B, pp. 5, 6-8).  The second-level grievance form reads:  "I request review of the grievance, Log Number _____, on the second level.  The

---

[3] If a response is overdue, the inmate may proceed to the next grievance level.  *Id.* at 3.

original copy of my grievance and all supporting documentation is attached for review."  However, when plaintiff attempted to file his second-level grievance on March 4, 2013, he failed to attach the necessary documentation.  Plaintiff received a response on April 24, 2013, that stated that his second-level grievance was rejected because "[y]ou must attach all prior level grievance documentation to your appeal" (*id*. at 4; #17, p, 5).  On May 12, 2013, plaintiff filed his second-level grievance again, this time apparently with all documentation attached (#17, Ex. B, p. 3).  On August 7, 2013, plaintiff received a response that indicated that the grievance was rejected as untimely because:  "The inmate must file an appeal within five (5) days of receipt of the response to proceed to the next grievance level." *Id*. at 2.  Defendants thus contend that plaintiff failed to comply with the prison grievance process; therefore, he has failed to properly exhaust available administrative remedies prior to filing this suit as required by the PLRA (#17, p. 5).

The parties do not dispute that Grievance Log No. 2006-29-51365 is the only grievance at issue.  Defendants attach a copy of NDOC Grievance Log No. 2006-29-51365 (#17, Ex. B, authenticated by NNCC Administrative Assistant Monica Navarro, #17, Ex. D).  In plaintiff's opposition, he essentially reiterates the defendants' timeline above.  However, plaintiff attached his sworn declaration to his opposition to the motion (#21, p. 7), and in it he attests that he did in fact attach all proper documentation to his first attempt at a second-level grievance:  "Rather, I did attach all prior level grievance [sic], *i.e.*, the informal level and the first level grievance to the second level grievance, on 3-4-13, as signed off on by Ms. Navarro, on 3-5-13 and returned to [plaintiff] on 4-24-13." *Id*.

Leaving aside whether plaintiff's declaration creates a genuine dispute of material fact, the court finds that defendants nevertheless have failed to meet their burden on summary judgment.  Defendants have failed to demonstrate that plaintiff's second attempt to submit his second-level grievance was untimely under AR 740.  The form that plaintiff received with his rejected second-

level grievance stated that the grievance was returned to him because "You must attach all prior grievance documentation to your appeal" (#17, Ex. B, p. 4). The form states: "You may resubmit your grievance after correcting the above deficiencies. Failure to resubmit the grievance through the prescribed timeframe shall constitute abandonment." *Id.* AR 740 provides that an inmate must file an appeal of the first-level response within five days; however, the regulation does not expressly provide a timeframe for submitting a corrected version of a rejected grievance. While the oblique reference on the second-level grievance form to the "prescribed timeframe" may reference the five-day timeframe to appeal the first-level grievance, it is not at all clear that that applies to re-submitting a corrected grievance. AR 740 does not set forth an explicit timeframe within which to correct a rejected grievance. Thus, it is not clear that plaintiff's re-submitted second-level grievance was properly rejected as untimely. Defendants' have failed to demonstrate that plaintiff did not properly exhaust his available administrative remedies; therefore, summary judgment in their favor should be denied.

Finally, the court notes that while plaintiff's second-level grievance was returned to him as allegedly improper because he "failed to attach all prior level grievance documentation per [AR] 740" (#17, Ex. D), nowhere in AR 740 is it specified that the inmate must submit his previous level grievance at the next level of review. The first and second-level grievance forms state "[t]he original copy of my grievance and all supporting documentation is attached for review" (#17, Ex. B, pp. 3, 7). This statement also does not clearly direct the inmate to attach copies of both the informal and first-level grievances (copies that prison staff, notably, already possesses). Thus, defendants repeatedly rely on an alleged requirement to submit such copies at the next level of review as the basis for the rejection of plaintiff's second-level grievance, yet they never point to where that requirement is specifically written, nor can the court ascertain such written requirement.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants have failed to establish that no genuine dispute of material fact exists as to whether plaintiff properly

exhausted his administrative remedies, and therefore, their motion for summary judgment should be denied.  The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#17), which has been construed as a motion for summary judgment, be **DENIED**.


**DATED:**  June 3, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**