# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RAMIRO VELA,

          Plaintiff,

   v.

R. BANNISTER, *et al.*,

          Defendants.

3:13-cv-0227-RCJ-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

     This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#30), plaintiff's opposition (#37), and defendants' reply (#39).  Having thoroughly reviewed the record and papers, the court recommends that defendants' motion be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     Ramiro Vela ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC").  Presently, plaintiff is incarcerated at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada.  Acting *pro se*, plaintiff filed an Amended Complaint against several NNCC and NDOC officials on August, 27, 2013 (#6).  On September 25, 2013, the court screened the complaint, pursuant to 28 U.S.C. § 1915A (#7).  Under the Screening Order, plaintiff was permitted to proceed in this action on Eighth Amendment deliberate indifference claims against three prison officials (together, "defendants"): NDOC Medical Director Dr. R. Bruce Bannister ("Bannister"); NNCC Physician Dr. Marsha Johns ("Johns"); and NNCC Associate Warden Lisa Walsh ("Walsh").  (#7 at 4).

The essence of plaintiff's complaint is that Bannister and Johns denied him proper medical care for his degenerative hip and back conditions by prescribing "placebo" medications for his hypertension.   (#6 at 4-5).   He alleges that he was prescribed Losartan Potassium in place of Micardis due to the cost of the latter medication.   (*Id.*).   Upon the "overruling" of this prescription change by NNCC Physcian Dr. Karen Gedney, plaintiff alleges that Bannister and Walsh delayed the required administrative approval for plaintiff to resume Micardis for over five months.   (*Id.*).

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials.   *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).   The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).   "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."   *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).   A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.   *Id.*   Therefore, conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.   *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).   At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.   *See Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.   A moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving

party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute that requires a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Orr*, 285 F.3d at 783.

### III.    DISCUSSION

**A.    Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is "merely . . . the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983 require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official who acts under the color of state law.  *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.    Eight Amendment Deliberate Indifference Claims**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting imposition of cruel and unusual punishment by state actors.  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  The Constitution's stricture on the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners.  *Id.* at 104.  It is well-settled law that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Id.* at 105.

In the Ninth Circuit, deliberate indifference claims are analyzed under a two-part test.  "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show . . . . an objective standard—that the deprivation was serious enough to constitute cruel and unusual

punishment—and a subjective standard—deliberate indifference."  *Colwell*, 763 F.3d at 1066 (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted).  The objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain.  *Jett v. Penner*, 439 F.3d 1090, 1096 (9th Cir. 2006). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain."  *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

The subjective element considers the defendant's state of mind and whether the plaintiff was harmed.  Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element of the test satisfied.  *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004)).  The conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she must also draw that inference."  *Id.* at 837.  The standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or unintentional failures to provide adequate medical care . . . ," *Estelle*, 429 U.S. at 105. Finally, the plaintiff must prove that he was harmed by the indifferent actions, though the harm need not be substantial.  *Jett*, 439 F.3d at 1096.

Under these principles, the medical care due to prisoners is not limitless.  "[S]ociety does not expect that prisoners will have unqualified access to health care," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); therefore, prison officials are not deliberately indifferent simply by selecting or prescribing

a course of treatment or care different than that which the inmate requests or prefers, *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir. 2007).   Only where the prison's chosen course of treatment is "medically unacceptable under the circumstances" can the officials' medical choices be constitutionally infirm.   *Colwell*, 763 F.3d at 1068 (quoting *Snow*, 681 F.3d at 988) (internal quotation marks omitted).

The court recommends that summary judgment be granted for all defendants on plaintiff's Eight Amendment claims.   The evidence before the court establishes the following facts beyond dispute, and plaintiff's opposition (#37) offers nothing but legal conclusions and bare allegations, entirely devoid of corroborated facts from which a jury could find a different version of events. Rather than a placebo, Losartan is, in fact, a generic form of Micardis, plaintiff's prior hypertension medication. (#30, Exh. A).   In an affidavit, Johns stated that the NDOC Pharmacy and Therapeutics Committee decided in spring 2012 to remove Micardis from the NDOC's formulary and replace it with Losartan.   (*Id.*).   All inmates, including plaintiff, remained on Micardis only until their current supplies of that medication expired, at which time they were automatically switched to Losartan. (*Id.*).   Plaintiff extinguished his supply in July, and thereafter, began the Losartan prescription.   (*Id.*; *see also id.*, Exh. F).

At his annual physical, Dr. Gedney determined that Losartan was not effectively controlling plaintiff's hypertension.   (*Id.* Exh. H).   Accordingly, on September 19, 2012, she placed a "non-formulary request" for Micardis, which plaintiff would resume upon the NDOC's approval.   (*Id.*, Exhs. H, F).   Pursuant to applicable regulations, the NDOC Medical Director—Bannister—must approve all non-formulary requests.   (*Id.*, Exh. D)   Plaintiff indicated his receipt of the medication on October 3, 2012 (*Id.*, Exh. F); therefore, contrary to plaintiff's uncorroborated allegation that

defendants delayed (*see* #37 at 3), the evidence establishes beyond dispute that Bannister approved the Gedney's Micardis prescription sometime within that two-week window.

Accordingly, plaintiff's Eighth Amendment claims necessarily fail. Although plaintiff's hypertension condition is a serious medical condition which satisfies the test's objective element, *see Jett*, 439 F.3d at 1096, no reasonable jury can find in plaintiff's favor on the subjective element. Even assuming each of the defendants possessed knowledge of plaintiff's hypertension, they engaged in no deliberately indifferent actions. Johns had no role in changing plaintiff's Micardis prescription to Losartan (*Id.*, Exh. A), other than, perhaps, not herself submitting a non-formulary request. Yet the decision to allow plaintiff to begin the generic medication, as provided by the NDOC formulary, was not a medically unacceptable decision, *Colwell*, 763 F.3d at 1068, for generic medications are common and plainly acceptable medical choices. Accordingly, without specific knowledge that Losartan would be inefficacious for plaintiff before he began taking that medication, Johns could not have been deliberately indifferent. No such evidence supports the notion that Johns—or any defendant—had such information when plaintiff began taking Losartan in July.

Similarly, Bannister was not deliberately indifferent. The record also demonstrates that, as soon as Gedney discovered the medication was not as effective at controlling plaintiff's hypertension, Bannister approved within two weeks—not five months—plaintiff's return to Micardis. Bannister's role in changing the NDOC formulary from Micardis to Losartan was not medically unacceptable, *Colwell*, 763 F.3d at 1068, and no reasonable jury could find that the two week window between Gedney's request and his approval constituted delay—much less delay that put plaintiff at an excessive risk of harm.

Finally, the evidence establishes that Walsh had no role in these events, other than responding to plaintiff's grievances which were filed *after* Gedney's request and, in fact, merely one

day before plaintiff resumed Micardis.  (#30, Exhs. F, G).  This conduct was not deliberately indifferent.  Accordingly, because the evidence establishes that there are no factual disputes and defendants are entitled to judgment as a matter of law, the court recommends that defendants' summary judgment motion be granted.

## VI.    CONCLUSION

Based upon the foregoing, the court concludes that defendants were not deliberately indifferent to plaintiff's medical needs and, therefore, defendants are entitled to summary judgment.

The parties are advised:

1.        Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.        This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's summary judgment motion (#30) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:**  January 23, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**